***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On June 13, 2000, plaintiff was employed by defendant-employer as a truck driver performing various duties and sustained an admittedly compensable injury by accident. Defendant-employer is duly self-insured.
3. Plaintiff's average weekly wage at the time of his injury was $1,200.00, yielding a weekly compensation rate of $588.00.
4. The issues for determination are:
 a. What injuries, if any, to plaintiff were causally related to his motor vehicle accident of June 13, 2000?
 b. What amount, if any, is defendant entitled to as a credit for short-term disability and long-term disability benefits paid to plaintiff?
5. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit 1 consists of Industrial Commission Forms, plaintiff's wage records and plaintiff's medical records.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 45 years old, had completed high school and had one year of mechanical drafting at Cape Fear Technical Institute. Plaintiff received his insurance license in 1975.
2. On or about August 12, 1996, plaintiff began employment with defendant-employer as a hub truck driver. Plaintiff's duties consisted of loading trucks in Leland, North Carolina, transporting the load to Florence, South Carolina, and unloading the trucks. Plaintiff worked 70-80 hours per week and earned a weekly wage sufficient to yield the maximum compensatory amount of $588.00 for 2000, the year of plaintiff's injury.
3. On June 13, 2000, plaintiff was involved in an accident while returning from Florence, South Carolina on Highway 74. Plaintiff's truck jack-knifed and he was thrown against the steering wheel and the driver's door. Plaintiff injured his back, and while waiting for rescue squad assistance began to experience pain radiating into his right leg.
4. Plaintiff was transported to New Hanover Regional Medical Center where x-rays revealed diffuse degenerative disc changes. Dr. Joseph Wehner recommended a CT scan to rule out possible fracture.
5. Plaintiff did not work the next week and was sent by defendant-employer to Dr. Mark Foster of Wilmington Orthopedic Group. On June 16, 2000, plaintiff presented to Dr. Charles L. Nance in Dr. Foster's office with complaints of low and mid back pain with tenderness over the cervical paraspinous muscles, thoracic paraspinous muscles and rhomboid area. Dr. Nance diagnosed plaintiff with a lumbar strain. He placed plaintiff on medication to control the pain.
6. On June 16, 2000, plaintiff began treatment with Dr. Foster. Following his examination, Dr. Foster diagnosed plaintiff with a lumbar strain and recommended a structured therapy program. Dr. Foster opined that plaintiff was unable to work.
7. On June 26, 2000, Dr. Foster released plaintiff to return to work at light duty for a maximum of six hours per day with no lifting of over 15 pounds and any bending or crawling. Plaintiff was continued on medication and physical therapy.
8. Plaintiff returned to work at light duty and at reduced wages. Four weeks after his accident, plaintiff requested that Dr. Foster allow him to return to full duty so that plaintiff could return to full wages. On July 10, 2000, Dr. Foster found plaintiff to have reached maximum medical improvement and assigned a 0% permanent partial disability rating to his back. He released plaintiff to return to work at full duty with lifting restrictions of 15 lbs for two weeks, then 25 lbs for an additional two weeks. Thereafter, plaintiff had no restrictions.
9. Plaintiff returned to work and although plaintiff testified that he experienced pain while he worked, he did not seek medical attention for approximately nine months.
10. On April 9, 2001, plaintiff returned to Dr. Foster with complaints of low back pain. Dr. Foster diagnosed plaintiff with chronic low back pain and continued plaintiff on medication.
11. On May 17, 2001, Dr. Foster released plaintiff to return as needed. He maintained his diagnosis of chronic low back pain and continued plaintiff on medication as treatment. Again Dr. Foster released plaintiff to return to full duty work without restrictions.
12. At his deposition, Dr. Foster reviewed an MRI taken of plaintiff's back on August 30, 2001, and a myelogram and CT scan taken on April 18, 2002. Dr. Foster opined that both tests showed arthritic changes and some narrowing of varying degree, which demonstrates an arthritic back. Dr. Foster opined that the sprain/strain of plaintiff's back in June and July 2000 was consistent with the motor vehicle accident, but that he could not relate plaintiff's current arthritic back condition with the work-related accident.
13. On April 2, 2002, plaintiff presented to orthopedic surgeon Dr. Mark Roger, upon referral by plaintiff's family physician. Plaintiff gave a history of injuring his back in a motor vehicle accident in June 2000, and provided Dr. Roger with the August 2001 MRI. Dr. Roger noted progressive arthritis or degeneration of plaintiff's spine, which might have been pinching nerves. He ordered the myelogram, which showed significant arthritis in plaintiff's back and sufficient narrowing to constitute stenosis. Dr. Roger wrote plaintiff out of work, but did not consider him a surgical candidate.
14. When presented with a hypothetical relating plaintiff's current condition to the motor vehicle accident of June 2000, Dr. Roger opined that he could not to a reasonable degree of medical certainty relate plaintiff's current symptoms with his original 2000 injury. Further, Dr. Roger was unable to reasonably relate plaintiff's symptoms to an aggravation of a pre-existing condition by the events of June 13, 2000. While Dr. Roger was confident that plaintiff suffered a back injury as a result of his motor vehicle accident in June 2000, he opined that plaintiff recovered from that injury by the time he was discharged by Dr. Foster in July 2000. Dr. Roger further opined that plaintiff's current symptoms are related to a continuing degenerative condition and not to the June 2000 injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on June 13, 2000. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $588.00 per week for the period from June 13, 2000 through the time he returned to work at light duty. Thereafter, plaintiff is entitled to compensation based on two-thirds of the difference between the wages he earned at light duty and his pre-injury wages for the period of time until he returned to work at full wages. N.C. Gen. Stat. §§ 97-29, 97-30.
3. As of the date that plaintiff returned to work following his release by Dr. Foster, he was no longer disabled as defined under the Act as a result of the work-related motor vehicle injury of June 13, 2000. All of the expert testimony offered by Drs. Foster and Roger indicate that plaintiff's current condition is unrelated to his work-related injury. It is plaintiff's burden to show that his current condition and resulting disability is causally related to his work-related injury. Plaintiff has failed to present any medical evidence in satisfaction of this burden; therefore, plaintiff's subsequent medical care and lost wages are not compensable under the Act. N.C. Gen. Stat. § 97-2.
4. Plaintiff is entitled to have the defendant pay for medical expenses incurred as a result of his compensable June 13, 2000 injury by motor vehicle accident, including his treatment by Dr. Foster through July 10, 2000. N.C. Gen. Stat. § 97-2(19), 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $588.00 per week for the period from June 26, 2000 through the time when plaintiff returned to work at light duty.
2. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary partial disability compensation equal to two thirds of the difference between the wages plaintiff earned upon his return to work at light duty and his pre-injury wages for the period until plaintiff returned to full wages.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendant shall pay medical expenses incurred by plaintiff in the treatment of his back injuries resulting from the June 13, 2000 motor vehicle accident through the date of his release by Dr. Foster on July 10, 2000.
5. Plaintiff's claim for further benefits must be denied.
6. Defendant shall pay the costs.
This the ___ day of August, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER